30 So.2d 4

**MOBILE CITY LINES, Inc., v. ALEXANDER.**

I Div. 249.

Supreme Court of Alabama.

April 10, 1947.

Johnston, McCall & Johnston, of Mobile, for appellant.

Wm. G. Caffey, of Mobile, D. G. Ewing, of Birmingham, and F. F. Windham, of Tuscaloosa, for appellee.

**LAWSON, Justice.**

The appellee, plaintiff below, brought suit against the appellant, claiming damages for personal injuries and for damage to her automobile resulting from a collision with one of defendant's busses.

The complaint contained two counts, the first charging simple negligence, the second charging wantonness. Demurrers to each count of the complaint were overruled and thereupon defendant interposed the plea of the general issue to the complaint and two pleas of contributory negligence to Count 1, the simple negligence count. Plaintiff's demurrer to the pleas of contributory negligence was overruled.

There were verdict and judgment for plaintiff in the sum of $3,000. Defendant's motion for a new trial having been overruled, it has appealed to this court.

One of the questions presented on this appeal is the refusal of the trial court to give at the request of defendant the affirmative charge as to the wanton count.

The collision occurred about 12:30 A.M. on the morning of April 7, 1944, at or near the intersection of Savannah and Broad Streets in the city of Mobile. Plaintiff was alone in her 1936 model Ford coupe, traveling in a western direction on Savannah Street, and defendant's bus was proceeding north on Broad Street, which is a main thoroughfare between the northern and southern sections of the city. There was a stop sign at the northeast corner of the intersection of these two streets, erected in accordance with a municipal ordinance which required all traffic proceeding westward on Savannah Street to stop before entering the intersection. The northeast and southeast corners of this intersection were described as being "open corners."

Plaintiff was the only witness for herself as to how the collision occurred. Her story was substantially this: That she had driven a friend to the bus station in Mobile and was returning to her home, traveling in a western direction by way of Savannah Street; that when she reached the intersection she brought her car to a complete stop, but did not skid her tires in so doing; that she looked in both directions on Broad Street but did not see the bus; that she entered the intersection slowly, turned to her left (south) and then for the first time saw the bus, which was moving in a northern direction at a high rate of speed, on the wrong side of Broad Street (west side); that the defendant's bus hit her car "very shortly" after she saw it and when her car was on the west side of Broad Street; that the collision occurred in spite of her efforts to avoid it by turning her car to the right and by applying the brakes on her car to such an extent as to cause her car to skid. Plaintiff was rendered unconscious and could not give an account of any of the events occurring immediately after the impact.

The evidence for the defendant tends to show that the bus was en route from Brookley Field to Mobile, traveling in a north-

ern direction on Broad Street; that after discharging two passengers at an intersection two blocks south of the scene of the collision, the bus continued north on Broad Street about five feet from the east curb of said street at a speed of approximately twenty-five miles an hour; that plaintiff's car entered the intersection at a high rate of speed and ran into the forward part of the right side of the bus. The driver of the bus testified that as the bus was proceeding north on Broad Street he was keeping a lookout ahead as well as observing the side streets; that he did not blow the whistle on the bus midway of the block nor did he ever blow the whistle after seeing the plaintiff's car inasmuch as the collision occurred almost the instant he saw her car. According to this witness, he observed no reflection from the lights on plaintiff's car and did not see it until it was practically in the intersection. He further testified that after seeing plaintiff's car he did not have time to put on the brakes or do anything to avoid the collision. According to his testimony, the force of the impact did not force him from the driver's seat, but did knock his foot off the brake pedal and his hands from the steering wheel, as the result of which he lost complete control of the bus and it proceeded diagonally across Broad Street and ran into a fish market or shop located on the west side of that street north of the intersection. Only one other occurrence witness testified for the defendant. He was Grover C. Morrisette, a passenger on the bus, and his testimony is in most respects similar to that of the bus driver. However, he did state that the bus driver blew a horn about midway of the block south of the scene of the collision and that immediately after the collision he saw the driver "standing up holding to the steering wheel."

The evidence shows that the fish shop was the second building on the west side of Broad Street north of the intersection. An Atlantic & Pacific Co. store was on the corner. It was estimated that the front end of the bus was from fifty to sixty feet from the north line of Savannah Street when it stopped in the fish shop. The evidence tends to show that the fish shop, which was a frame building, was practically demolished by the bus.

After the collision, plaintiff was found lying in Broad Street at a point estimated as being from four to nine feet from the east curb and from twenty to forty feet north of Savannah Street. Her car was found approximately in the middle of Broad Street at a point variously estimated as being from sixty to 100 feet north of Savannah Street. The ignition was still on but the motor was not running.

Photographs of plaintiff's car and of defendant's bus were introduced in evidence. Police officers of the city of Mobile testified that they investigated the scene of the collision a short time after it happened and found skid marks fifteen to twenty feet in length leading from Savannah Street into Broad Street and that they saw marks which indicated that the collision occurred "in the middle of the intersection, about seven feet from the curbing."

■ Considering the whole evidence, the question of wantonness was one for the jury. If plaintiff's evidence is to be believed, the collision occurred at a place where plaintiff had a right to be and when defendant's bus was traveling at a high rate of speed on the wrong side of the street. There was evidence that the bus driver had blown a horn midway of the block. The jury could have found from the fact that the horn was blown that the bus driver was aware of plaintiff's presence on the west side of the street, but nevertheless continued to drive the bus on that side at a high rate of speed, thereby hitting plaintiff's car.

A decision to the effect that on such tendency of evidence the trial court was not authorized to exclude the issue of wantonness from the jury is that in the case of Daniel v. Motes, 228 Ala. 454, 153 So. 727, where it is said:

"Stating the rule applicable to a case of this character, we hold that if A drives his car down the center of the road, and meets B, driving his car well on his side of the road, and A, in violation of the law of the road, refuses to turn to the right, and keeps straight ahead with a view of forcing B still further out on his side for fear of a

collision, but B continues in the zone he has the right to be, and thus a collision becomes so imminent that it is too late for A to turn to the right and avoid it, A may be guilty of a wanton wrong. Though he may not intend a collision, if he knowingly and wrongfully brings on a condition of danger, taking a chance on the other fellow giving way to his wrongful course, until too late for preventive effort, such conduct has all the evidence of a wanton act." 228 Ala. at page 455, 153 So. at page 728.

Principal contention of the appellant seems to be that its motion for a new trial should have been granted on the ground that the verdict was contrary to the great weight of the evidence.

It is, of course, the law that where the great weight of evidence is against the verdict and so decided that the court is convinced that it is wrong and unjust, a new trial should be granted. Byars v. Hollimon, 228 Ala. 494, 153 So. 748; Carraway v. Graham, 218 Ala. 453, 118 So. 807. It is also well established that this court has not renounced its duty nor neglected its power to review the verdict of the jury and the conclusions of the trial judge on questions in general, where, in our opinion, after making all proper allowances and indulging all reasonable intendments in favor of the court below we reach a clear conclusion that the finding and judgment are wrong. Twinn Tree Lumber Co. v. Day, 181 Ala. 565, 61 So. 914.

But it is also true that "the findings of a trial court are, on appeal, presumptively correct; and the burden is upon the appellant to show error. The verdict of a jury and the judgment of a trial court are solemn things; and they should not be overturned by an appellate court, unless a good, legal reason therefor is shown." Girardino v. Birmingham So. R. Co., 179 Ala. 420, 60 So. 871. Nor is the verdict to be set aside merely because it does not correspond with the opinion of the court or is against the great preponderance of the evidence. Bates et al. v. Chilton County, 244 Ala. 297, 18 So.2d 186.

Applying the principles set out above, we are unable to reach the conclusion that the trial court erred in refusing to grant defendant's motion for a new trial. It is true that the plaintiff's testimony as to how the accident occurred stands alone. It was violently contradicted by two witnesses for the defendant. But evidence is not weighed by the number of witnesses who testify.

The defendant insists, however, that it is definitely established by the record in this case that the evidence given by the plaintiff is untrue for two reasons: (1) That she was so under the influence of intoxicating liquor at the time the collision occurred that she has no recollection of what took place; (2) that the physical facts conclusively demonstrate that the accident could not have occurred as the plaintiff said it did occur.

We have given careful consideration to the evidence in this case as it relates to the question as to whether or not the plaintiff had been drinking just prior to the time the collision occurred. The evidence on this question is in direct conflict. The question as to whether or not the plaintiff was under the influence of intoxicating liquor at the time the collision occurred and if so, to what extent, was a question for the jury and it resolved that question in favor of the plaintiff.

It is defendant's contention that if the accident had occurred as plaintiff said it did that she and her car and the defendant's bus would not have been found where they were found after the collision. Defendant also insists that the pictures of the bus and the automobile which were introduced in evidence also conclusively demonstrate that the collision did not occur as plaintiff contended.

We cannot say that it was physically impossible for plaintiff, her automobile and defendant's bus to have been in the position in which they were found after the collision if the collision occurred as testified to by plaintiff. This heavy bus and the Ford automobile collided while they were both in motion, and we think it a matter of common knowledge that when two such moving objects collide at a rate of speed as shown by the evidence in this case that they may behave in a manner

which *seemingly* defies all the laws of physics. The pictures of the automobile and bus which were introduced in evidence were, of course, taken after the plaintiff's automobile had stopped in Broad Street at a point sixty to 100 feet from the place of collision and after the bus had travelled from forty to sixty feet and had run over an eight-inch curb and into a frame building with such force that the building was practically demolished. The pictures of the bus show that it was damaged on its left side as well as on its right side and also that the front part of the bus was damaged. It is the defendant's argument that the damage on the right-hand side of the bus was caused by the plaintiff's automobile running into it as defendant's witnesses testified. But this was a matter for the jury. Certain it is that we cannot from these pictures say just how much the original impact contributed to cause the resulting damage to the two vehicles and which particular part of the bus was damaged as a result of that impact. We do not think that it can be determined from the record here presented that the testimony of the plaintiff should have been disregarded because it was unbelievable.

Furthermore, on cross-examination plaintiff demonstrated to the jury the manner in which the collision occurred on a sketch or diagram exhibited to her by counsel for the defendant, but this sketch is not before us. Under such circumstances, when the jury has the benefit of evidence not available to us, we will not say that the motion for new trial should have been granted on the ground that the verdict is contrary to the great weight of the evidence. Godfrey v. Vinson, 215 Ala. 166, 110 So. 13; Alabama Terminal R. Co. v. Benns, 189 Ala. 590, 66 So. 589.

Refused Charge 10, if not otherwise objectionable, was properly refused in that it makes contributory negligence a bar to the wanton count. Roberts v. McCall, 245 Ala. 359, 17 So.2d 159.

The trial court did not err in refusing Charge 5. This court has frequently held that similar charges were properly refused as being confusing and misleading. Caudle v. Birmingham Electric Co., 247 Ala. 34, 22 So.2d 417; Motor Terminal & Transportation Co. v. Millican, 244 Ala. 39, 12 So.2d 96; Sloss-Sheffield Steel & Iron Co. v. Willingham, 243 Ala. 352, 10 So.2d 19; Kelly v. Hanwick, 228 Ala. 336, 153 So. 269.

There was no error in refusing Charge 7. The principle of law stated, or attempted to be stated, in this charge was fairly and substantially covered by given Charge 14, requested by defendant. § 273, Title 7, Code 1940; Oden-Elliott Lumber Co. v. Daniel-Gaddis Lumber Co., 215 Ala. 392, 110 So. 607.

The refusal of Charge 8, a "sole proximate cause" charge, does not constitute reversible error. The rule that such a charge should not be given when there is an issue of wantonness was re-affirmed in the case of Seitz v. Heep, 243 Ala. 372, 10 So.2d 148.

On the cross-examination of one of the witnesses for defendant, counsel for the plaintiff asked the following question: "How many times have you talked to the claim agent of the Mobile Bus Lines or the insurance company?" The witness answered, "I don't believe I have talked to any of them, not myself."

The question was not objected to nor was any action of the court invoked thereon until after the completion of both the cross-examination and re-direct examination of the witness, when counsel for the defendant moved for a mistrial on the ground that counsel for plaintiff had asked this witness if he had not talked to a claim agent of an insurance company. The motion for mistrial was denied and defendant excepted.

We are not willing to say that this case should be reversed because of the trial court's failure to grant the mistrial as requested by defendant. We think that we are justified in assuming that the trial court found that the inclusion in the question of the reference to the insurance company was inadvertent and that such reference, in view of all the circumstances, was not so prejudicial to the defendant as to require that a mistrial be declared. We are clearly of the opinion that reversible error is not made to appear in this connection.

Grover C. Morrisette, who was a passenger on defendant's bus at the time of the collision, testified on behalf of the defendant. He testified as to facts tending to show that the driver of the bus was free from fault and that the car driven by the plaintiff ran into the side of the bus at a point not far distant from the place where the witness was sitting in the bus.

On cross-examination of this witness the following occurred:

"Q. Did you get hurt on the bus, Grover? A. No, sir, I did not get hurt.

"Q. Did the Bus Company pay you anything?

"Mr. Johnston: I object to that; it is wholly inadmissible. He was a passenger on the bus at the time.

"The Court: I overrule the objection.

"Mr. Johnston: I except. I object to the question on the ground that it calls for irrelevant, incompetent and immaterial testimony.

"The Court: I overrule the objection.

"Mr. Johnston: I except.

"Q. Did the Bus Company pay you anything for this accident? A. Yes, sir.

"Q. And you were not hurt? A. No, sir, I was not hurt.

"Mr. Johnston: We move to exclude that answer as being irrelevant, incompetent and immaterial; he was a passenger on the bus.

"The Court: I overrule the motion.

"Mr. Johnston: I except."

Unquestionably the court correctly permitted plaintiff to inquire of this witness as to whether or not he was hurt as a result of the collision, as that fact was of the res gestae of the fact under investigation and tended to shed light on the occurrence. Louisville & N. R. Co. v. Mothershed, Adm'r, 121 Ala. 650, 26 So. 10; Bessierre v. Alabama City G. & A. R. Co., 179 Ala. 317, 60 So. 82; Miles v. Hines, 205 Ala. 83, 87 So. 837; Alabama Power Co. v. Bruce, 209 Ala. 423, 96 So. 346; Routledge v. Schmitt, 239 Ala. 436, 195 So. 246.

Defendant strenuously insists that it was reversible error for the trial court to permit plaintiff to show that witness Morrisette had received any payment from the defendant as a result of the collision for the reason that it tended to disclose a settlement by defendant with the witness which was tantamount to a statement that defendant had admitted its liability. Reliance is had upon the case of Chandler v. Owens, 235 Ala. 356, 179 So. 256, but the decision in that case is not here controlling as it related to a situation where the plaintiff called as a witness a person who had been the driver of the car in which the plaintiff was injured and attempted to show the results of negotiations for settlement between the witness and the defendant. The cases cited by defendant from other jurisdictions are to the same effect. Here the questions were propounded on cross-examination of a witness for the defendant. It is always permissible to cross-examine a witness to ascertain his interest, bias, prejudice, or partiality concerning the matters about which he is testifying. Alabama Power Co. v. Gladden, 237 Ala. 527, 187 So. 711. The party producing a witness may not shield him from such proper cross-examination for the reason that the facts thus elicited may not be competent upon the merits of the cause. We think this line of questioning was proper as tending to affect the credibility of the witness. The objections interposed were general and the evidence being admissible for the purpose above stated, the trial court correctly overruled the objections. Etheridge v. Gordon Const. Co. et al., 62 Wash. 256, 113 P. 639; Bluemel v. Kroizy et al., 114 Cal.App. 205, 299 P. 756; Missouri Pac. Transp. Co. v. Norwood, 192 Ark. 170, 90 S.W.2d 480; Gurley v. St. Louis Transit Co., Mo.App., 259 S.W. 895.

We find no reversible error in the record and the judgment of the trial court will accordingly be affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.